**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 08-cv-02665-REB-CBS

KEBD ENTERPRISES, LLC, a Colorado limited liability company,

    Plaintiff,

v.

MAURICE HIDER, an individual;
HIDER ENTERPRISES, INC, a Georgia corporation; and
HCM ENTERPRISES, INC., a Georgia corporation,

    Defendants.

**ORDER RE: MOTION TO DISMISS PURSUANT
TO F.R.CIV.P. 12(B)(2), (3) AND (6)**

**Blackburn, J.**

The matter before me is defendants' **Motion To Dismiss Pursuant to F.R.Civ.P. 12(b)(2), (3) and (6)** [#19], filed February 20, 2009. I grant the motion in part and deny it in part.

## I.  JURISDICTION

I putatively have subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity of citizenship).

## II.  STANDARD OF REVIEW

Defendants move to dismiss plaintiff's claims against them on the ground that they do not have sufficient minimum contacts with Colorado to warrant the exercise of personal jurisdiction over them in this forum.  Alternatively, they claim that venue is

improper in this district.[1]  "The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum," although "when there is a sound prudential justification for doing so, . . . a court may reverse the normal order of considering personal jurisdiction and venue."  *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2715, 61 L.Ed.2d 464 (1979).

The assumption of personal jurisdiction over a non-resident defendant on the basis of either a federal statute that does not authorize nationwide service of process[2] or diversity of citizenship involves a two-step inquiry.  First, the defendant must be amenable to service of process under the forum state's long-arm statute.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1056-07(10th Cir. 1995); *Dart International, Inc. v. Interactive Target Systems, Inc.*, 877 F.Supp. 541, 543 (D. Colo. 1995).  Second, the exercise of jurisdiction must comport with due process.  *Wenz*, 55 F.3d at 1507; *Custom Vinyl Compounding Inc. v. Bushart & Associates, Inc.*, 810 F.Supp. 285, 287 (D. Colo. 1992).  Because the Colorado long-arm statute extends personal jurisdiction within the state as far as the federal constitutional requirements of due process permit, *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002), the analysis collapses into a single inquiry as to whether the requirements

---

[1] Although defendants originally also moved to dismiss Counts I, IV, and V of the original complaint for failure to state claims on which relief may be granted, plaintiff has now filed an amended complaint that attempts to address the alleged deficiencies.  Defendants, therefore, have withdrawn that aspect of their motion.  (*See Unopposed Motion To Withdraw Pending Motions* ¶ 5 at 2 [#42], filed April 17, 2009.)

[2] The Lanham Act, plaintiff's sole federal claim, does not provide for nationwide service of process.  *Nestle Prepared Foods Co. v. Pocket Foods Corp.*, 2007 WL 1058550 at *3 (D. Colo. April 5, 2007).

of due process are satisfied.

Due process for jurisdictional purposes consists of two elements. First, the defendant must have sufficient "minimum contacts" with the forum state. ***International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement***, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); ***Kuenzle v. HTM Sport-Und Freizeitgeräte AG***, 102 F.3d 453, 455 (10th Cir. 1996). "Minimum contacts" may be analyzed in terms of specific jurisdiction or general jurisdiction. ***Helicopteros Nacionales de Colombia, S.A. v. Hall***, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); ***Trierweiler v. Croxton & Trench Holding Corp.***, 90 F.3d 1523, 1532 (10th Cir. 1996). Specific jurisdiction exists when the defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action. ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); ***Kuenzle***, 102 F.3d at 455. General jurisdiction is proper when the defendant has other "continuous and systematic" contacts with the forum, even if those contacts are unrelated to the pending litigation. ***Helicopteros Nacionales de Columbia***, 104 S.Ct. at 1872; ***Trierweiler***, 90 F.3d at 1533.

Second, if sufficient minimum contacts exist, then I must determine whether the exercise of personal jurisdiction over the non-resident defendant "would comport with 'fair play and substantial justice.'" ***Burger King Corp.***, 105 S.Ct. at 2184. Stated differently, I must determine whether assuming personal jurisdiction over the defendant is "'reasonable' in light of the circumstances surrounding the case." ***OMI Holdings, Inc. v. Royal Insurance Co. of Canada***, 149 F.3d 1086, 1091 (10th Cir. 1998). Factors

relevant to that analysis include

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

**Trujillo v. Williams**, 465 F.3d 1210, 1221 (10th Cir. 2006) (quoting **Pro Axess, Inc. v. Orlux Distribution, Inc.**, 428 F.3d 1270, 1279-80 (10th Cir. 2005)). "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." **Id.** (quoting **Pro Axess**, 428 F.3d at 1280).

I have discretion to resolve the motion on affidavits and other written material. **Behagen v. Amateur Basketball Association**, 744 F.2d 731, 733 (10th Cir. 1984), **cert. denied**, 105 S.Ct. 1879 (1985). Plaintiff has the burden to establish a *prima facie* case of personal jurisdiction. **Id**. I must accept the well-pleaded allegations of the First Amended Complaint as true. **Wenz**, 55 F.3d at 1505; **Behagen**, 744 F.2d at 733. However, plaintiff has "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." **Pytlik v. Professional Resources, Ltd.**, 887 F.2d 1371, 1376 (10th Cir. 1989).

Regarding defendants' alternative motion to dismiss for lack of improper venue, the federal venue statute provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events

4

>or omissions giving rise to the claim occurred, or a
>substantial part of property that is the subject of the action is
>situated, or (3) a judicial district in which any defendant may
>be found, if there is no district in which the action may
>otherwise be brought.

28 U.S.C. § 1391(b).  The question for purposes of this section is not to determine the "best" venue, ***Bates v. C & S Adjusters, Inc.***, 980 F.2d 865, 867 (2nd Cir. 1992), but only whether "significant events or omissions material to the plaintiff's claim . . . occurred in the district in question, even if other material events occurred elsewhere," ***Gulf Insurance Co. v. Glasbrenner***, 417 F.3d 353, 357 (2nd Cir. 2005).  Where venue in the filing district is found to be improper, the court "shall dismiss, or if it be in the interest of justice, transfer such a case" to a district in which venue properly lies.  28 U.S.C. § 1406(a).  The decision to either dismiss or transfer the case is committed to my sound discretion.  ***Keaveney v. Larimer***, 2000 WL 1853994 at *1 (10th Cir. Dec. 19, 2000); ***see also Trierweiler***, 90 F.3d at 1544 (not a clear abuse of discretion for the district court to deny a transfer when "a plaintiff either realized or should have realized that the forum in which he or she filed was improper").

### III.  ANALYSIS

In June, 2006, plaintiff acquired Belmar Pharmacy, a compounding pharmacy located in Lakewood, Colorado, from J. Charles Hakala and his company, Hakala Apothecaries, Inc.  As part of the sale, plaintiff acquired all rights and title to a line of bioidentical steroid hormone tablets, including the intellectual property used to compound the ingredients into tablets, a methodology known as the "lipid matrix system," and a unique ingredient called Micosolle.

5

Defendants Maurice Hider, both individually and through his company, Hider Enterprises, Inc., was an independent contractor for Belmar Pharmacy both prior and subsequent to plaintiff's acquisition. Hider marketed Belmar Pharmacy's products to healthcare providers and patients in the southeastern United States. After plaintiff acquired the business, Hider signed a Non-Disclosure and Confidentiality Agreement that prohibited him from disclosing plaintiff's "confidential information." Plaintiff alleges that Hider received various types of confidential information as part of his marketing effort's on behalf of Belmar Pharmacy, including patient and provider lists; inquiries, complaints, and sales information; product brochures and formulation and tableting information; and tablet samples.

In March, 2007, Hider ended his business relationship with plaintiff, and soon thereafter created defendant HCM Enterprises, Inc. ("HCM"). Plaintiff alleges that Hider and HCM now market hormone tablets containing the same ingredients and produced using the same methodology as those offered by Belmar Pharmacy. Plaintiff claims that Hider's marketing materials falsely claim that his formulation is new and unique. It further alleges that defendants have provided plaintiff's formulations for the compounding of hormone tablets to other compounding pharmacies in Georgia and Florida and have acquired ingredients for these formulations from Hakala and/or his company. In addition, defendants allegedly have marketed the tablets to healthcare providers to whom Hider previously sold plaintiff's tablets, telling them that plaintiff's products were of inferior quality. Plaintiff maintains that it has lost a significant portion of its Georgia customer base as a result of these actions. It has sued defendants for violation of the Lanham Act, 15 U.S.C. § 1125(a), breach of contract, misappropriation

of trade secrets, unfair competition, violation of the Colorado Consumer Protection Act, and conversion. Defendants now move to dismiss for lack of personal jurisdiction over them in this forum, or, alternatively, to dismiss or transfer the case for improper venue.

Plaintiff first argues that Hider and Hider Enterprises have the type of continuing and systematic contacts with Colorado that support the exercise of general jurisdiction over them in this forum. *See Helicopteros Nacionales de Colombia S.A.*, 104 S.Ct. at 1873. I disagree. "General jurisdiction recognizes that when a party's contacts with a state are so numerous and significant that the party has a domicile in or a near domicile relation to the state, the state may exercise jurisdiction over the party for any type of suit, regardless whether the suit is related to the specific contacts the party has with the state." *Haas v. A.M. King Industries, Inc.*, 28 F.Supp.2d 644, 648 (D. Utah 1998). Hider's contacts with this state do not rise to that high threshold. Hider's long-standing fractional ownership interest in a condominium in Snowmass, Colorado, and the fact that he routinely spends two to six weeks a year there, are not sufficient to make out a case for general jurisdiction. *See Trierweiler*, 90 F.3d at 1544 (no general jurisdiction over defendant who "often visit[ed] Colorado" and did a "relatively small amount of business in the state"); *Schneider v. Cate*, 405 F.Supp.2d 1254, 1259-60 (D. Colo. 2005) (no general jurisdiction as to defendant who, *inter alia*, owned a second home in Colorado as well as part of several Colorado corporations).

Nor are these contacts imputable to Hider Enterprises.[3] Even assuming *arguendo* that Hider Enterprises is a mere alter ego of Hider himself, a fact neither

---

[3] Plaintiff does not allege that HCM is subject to general personal jurisdiction in Colorado. (*See* **First Am. Compl.** ¶ 14 at 3 [#30], filed March 16, 2009.)

alleged in the First Amended Complaint nor supported by the evidence adduced in connection with this motion, that fact alone would be insufficient to confer general jurisdiction over Hider Enterprises based solely on Hider's contacts with this forum.  **See Home-Stake Production Co. v. Talon Petroleum, C.A.**, 907 F.2d 1012, 1020-21 (10th Cir. 1990).  Accordingly, personal jurisdiction over all defendants exists, if at all, only on the basis of specific jurisdiction.

I must examine each defendant's contacts separately to determine whether specific jurisdiction exists as to that defendant.  **Calder v. Jones**, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984); **Home-Stake Production Co.**, 907 F.2d at 1020.  Although the First Amended Complaint makes general allegations regarding "defendants'" allegedly tortious activities, such vague, global references are insufficient to provide fair notice, as required by Fed.R.Civ.P. 8(a), that any particular defendant may be subject to jurisdiction in this forum.  **See Robbins v. Oklahoma**, 519 F.3d 1242, 12450 (10th Cir. 2008).  ("[T]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants.").  Plaintiff cannot rely solely on such non-specific references to establish the requisite minimum contacts as to any particular defendant.

Reading the First Amended Complaint as a whole, the gravamen of plaintiff's complaint concerns activities that occurred after Hider terminated his relationship with plaintiff and incorporated HCM.  The allegations of the First Amended Complaint make clear that HCM is the corporate entity through which Hider is currently formulating and marketing the competing hormone tablets.  Conversely, there is no allegation or

evidence that Hider Enterprises continued to operate in any way, let alone in the development, marketing, and sale of hormone tablets, after Hider terminated his relationship with plaintiff.  Nor is there any allegation or proof that Hider Enterprises gave any information to which it was privy by virtue of its past relationship with plaintiff to HCM, or that Hider Enterprises and/or HCM should be considered mere shams or corporate shells.  I, therefore, must conclude that plaintiff has failed to substantiate a case of specific jurisdiction over Hider Enterprises in Colorado.  I, therefore, consider only whether Hider and/or HCM are subject to specific jurisdiction in Colorado.

A federal court may assume specific jurisdiction over a non-resident defendant that "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" **Benally v. Amon Carter Museum of Western Art**, 858 F.2d 618, 625 (10th Cir. 1988) (quoting **Hanson v. Denckla**, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958)).  The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." **Id**. (quoting **Burger King Corp.**, 105 S.Ct. at 2183 (internal citations and quotation marks omitted)).  The contacts with the forum state must be such that "it is foreseeable that the defendant should reasonably anticipate being haled into court there." **World-Wide Volkswagen Corp. v. Woodson**, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).  Specific jurisdiction must be shown with respect to each cause of action.  **See Remick v. Manfredy**, 238 F.3d 248, 255-56 (3rd Cir. 2001).

Although merely contracting with a Colorado resident is insufficient to confer specific jurisdiction in this forum, *see SGI Air Holdings II LLC v. Novartis International*, 192 F.Supp.2d 1195, 1202 (D. Colo. 2002), I find the totality of the circumstances supports specific jurisdiction over Hider as to plaintiff's breach of contract claim against him. "In a contract case, relevant factors for assessing minimum contacts include prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004), *cert. denied*, 125 S.Ct. 1826 (2005) (citation and internal quotation marks omitted).

The non-disclosure agreement Hider executed specifically provides that it will be governed by Colorado law. This factor, although not dispositive in itself, reaffirms Hider's "deliberate affiliation with [Colorado] and the reasonable foreseeability of possible litigation there." *Burger King Corp.*, 105 S.Ct. at 2187. *See also Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1359 (10th Cir. 1990); *Plus System, Inc. v. New England Network, Inc.*, 804 F.Supp. 111, 118 (D. Colo. 1992). Other factors cement my conclusion that Hider purposefully availed himself of the benefits of this forum and could reasonably foresee litigation in this state. The confidential information that Hider received as part of his relationship with plaintiff was developed and maintained in Colorado. The orders that Hider received from patients and providers in his territory were filled by plaintiff in Colorado. Moreover, the contract purports to create an ongoing obligation to maintain the confidentiality of this material even after termination. Given all these considerations, specific jurisdiction over Hider as to this claim is appropriate.

With respect to plaintiff's tort claims against Hider and HCM, the test for minimum contacts is whether defendants' actions "'were expressly aimed at' the forum jurisdiction and [whether] the forum jurisdiction was 'the focal point' of the tort and its harm." **Far West Capital, Inc. v. Towne**, 46 F.3d 1071, 1080 (10th Cir. 1995) (quoting **Calder**, 104 S.Ct. at 1486-87).

> [W]hen a defendant intentionally takes some action with the knowledge that the result will be harm to a specific victim in another state, the picture involves more than mere foreseeability or the likelihood that fortuitous and undirected conduct will have an effect in the state.

*Id.* at 1078 (quoting **Coblentz BMC/Freightliner, Inc. v. General Motors Corp.**, 724 F.Supp. 1364, 1368 (M.D. Ala. 1989), *aff'd*, 932 F.2d 977 (11th Cir. 1991)) (alteration in original).

The processes and information at issue in this case were developed by plaintiff in Colorado, and the tablets compounded using those processes and information were made and sold by plaintiff in and from Colorado. Hider and HCM allegedly are marketing competing hormone tablets that incorporate plaintiff's unique ingredients, which they have acquired from sources in Colorado. Hider and HCM also are allegedly using plaintiff's proprietary process to manufacture the tablets and plaintiff's confidential provider and patient lists to sell them. These lists too were developed and maintained in Colorado. In addition, Hider and HCM allegedly are comparing their products to plaintiff's tablets as part of their marketing efforts. Thus, even though Hider and HCM acted in Georgia, it is clear that their activities were expressly aimed at plaintiff and that Colorado was the focal point of both their allegedly tortious actions and the harm of

which plaintiff complains.  *See id.* at 1080.  Given all these considerations, I find and conclude that both Hider and HCM are subject to specific jurisdiction in this forum with respect to plaintiff's tort claims.

Further, I find that it would not contravene traditional notions of fair play and substantial justice to subject Hider and HCM to personal jurisdiction in Colorado. ***Burger King Corp.***, 105 S.Ct. at 2184.  Although litigating in Colorado arguably may be more burdensome for defendants than would be litigation in their home forum, there is nothing to suggest that any such burden is more than marginal.  ***AST Sports Science, Inc. v. CLF Distribution Ltd.***, 514 F.3d 1054, 1061 (10th Cir. 2008) (noting that "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity") (citation and internal quotation marks omitted).  Most of plaintiff's state law claims arise under Colorado law, which heightens this forum's interest in resolving the dispute, as does the fact that plaintiff is a Colorado resident.  *Id.* at 1062.  None of the other considerations relevant to the inquiry clearly indicate that it would be unreasonable to assume personal jurisdiction over Hider and HCM in this forum.  ***See Trujillo***, 465 F.3d at 1221; ***see also OMI Holdings, Inc.***, 149 F.3d at 1091.

Alternatively, defendants move to dismiss or transfer this case to the Northern District of Georgia for improper venue.  **FED.R.CIV.P.** 12(b)(3).  The existence of personal jurisdiction does not automatically make venue in the plaintiff's chosen forum appropriate.  "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the

claim[.]'" ***Cottman Transmission Systems, Inc. v. Martino***, 36 F.3d 291, 294 (3rd Cir. 1994). ***See also German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.***, 569 F.Supp. 1529, 1533 (S.D.N.Y. 1983) ("[I]mproper venue constitutes an independent ground for dismissing an action. That is to say, personal jurisdiction over the defendant may be present, but the defendant may still be in a position to argue that venue is improper."). Both plaintiff and defendants appear to agree that venue is determinable pursuant to 28 U.S.C. § 1391(b)(2), which provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Under this section, "[t]he court must decide whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim. The forum activities must have been events significant to the plaintiff's claims." ***Wempe v. Sunrise Medical HHG, Inc.***, 61 F.Supp.2d 1165, 1173 (D. Kan. 1999) (citations and internal quotation marks omitted).

Although significant events underlying plaintiff's claims occurred in Georgia, section 1391(b)(2) does not require the court to choose the best venue or determine which forum has the most, or most significant, contacts with plaintiff's claims. ***Bates***, 980 F.2d at 867. Rather, the question is merely whether significant events underlying the claims in suit occurred in the plaintiff's chosen forum. ***Gulf Insurance Co.***, 417 F.3d at 357. I find that standard met here. The proprietary information that is the heart of this action was developed and maintained by plaintiff here in Colorado. Plaintiff alleges that defendants continue to obtain necessary ingredients for their competing products from sources within Colorado. Hider contracted with a Colorado-based

company and agreed that questions arising under the non-disclosure agreement would be resolved pursuant to the law of this state.  Moreover, all plaintiff's injuries were suffered here in Colorado.  *See **Verizon Online Services, Inc. v. Ralsky***, 203 F.Supp.2d 601, 623 (E.D. Va. 2002); ***Wempe***, 61 F.Supp.2d at 1173.  Given these facts, even if venue also is proper in the Northern District of Georgia, it is not inappropriate in the District of Colorado.

**THEREFORE, IT IS ORDERED** as follows:

1.  That defendants' **Motion To Dismiss Pursuant to F.R.Civ.P. 12(b)(2), (3) and (6)** [#19], filed February 20, 2009, is **GRANTED IN PART** and **DENIED IN PART**;

2.  That the motion is **GRANTED** with respect to plaintiff's claims against defendant Hider Enterprises, Inc., and those claims are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction;

3.  That defendant Hider Enterprises is **DROPPED** as a named party to this action, and the case caption **AMENDED** accordingly; and

4.  That in all other respects, the motion is **DENIED**.

Dated May 26, 2009, at Denver, Colorado.

                                            **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge